In the Matter of the WELFARE OF the Children of J.B. and R.P.; S.K.J. and J.N.T.; S.L.A.J. and B.J.T., Parents.

No. A09–1146.

Supreme Court of Minnesota.

May 14, 2010.

Donald F. Ryan, Crow Wing County Attorney, Brainerd, MN, for appellant Crow Wing County.

Kathleen A. Heaney, Sherburne County Attorney, Arden Fritz, Assistant County

Attorney, Elk River, MN, for amicus curiae Minnesota County Attorneys Association.

Bradford S. Delapena, Special Assistant Public Defender, St. Paul, MN, for amicus curiae Minnesota State Public Defender.

## OPINION

MAGNUSON, Chief Justice.

Between November 2007 and October 2008, appellant Crow Wing County filed child-protection (CHIPS) petitions in the three cases now before us. In each case, the indigent parents petitioned for representation and the district court appointed private counsel for the indigent parents. After the County refused to pay the appointed attorney's invoices, arguing that the district court must appoint a public defender to represent the indigent parents, the district court held the county auditor and county commissioners in civil contempt. The County appealed the order for civil contempt and sought accelerated review, which we granted. The questions presented on appeal involve whether the district court erred in ordering the appointment of private counsel to represent indigent parents in juvenile protection proceedings at county expense.[1] Because we conclude that the cost of court-appointed counsel to represent indigent parents in juvenile protection proceedings is a charge upon the county in which the proceedings are held, we affirm.

In June 2008, the Minnesota State Board of Public Defense resolved to discontinue representation of parents, custodians, and guardians in juvenile protection proceedings. In July 2008, the Crow Wing

County Board voted not to pay for court-appointed counsel in juvenile protection proceedings.

Between November 2007 and October 2008, Crow Wing County filed in Crow Wing County District Court the three child-protection (CHIPS) petitions that are now before us. In all three cases, counsel appointed to represent the parents eventually moved to withdraw based on the County's refusal to pay the attorneys' invoices and the County's stated refusal to pay for representation in the future. In each case, the attorney's motion to withdraw was granted; each of the three cases was continued until the issue of payment for counsel is resolved.

The three cases were then consolidated before the chief judge of the district, who ordered the County to pay for legal services incurred in the three cases or appear (in the person of the county auditor and the county commissioners) to show cause why the County should not be held in contempt of court. On March 31, 2009, after the hearing on the court's order to show case, the district court found that the State Board of Public Defense "lacks resources to represent parents in CHIPS cases and lacks the ability to raise funds and lacks any source of revenue other than the funding provided by the legislature." The district court further found that the counties "have the ability to raise revenue and/or shift resources." In addition, the district court found that the County had "put in escrow sufficient funds to pay the attorneys' fees, but has not paid them." The district court held the county auditor and county commissioners in civil contempt and sentenced each of them to 30

---

1. Although the cases consolidated here are child-protection (CHIPS) cases, the statutory provisions at issue apply equally to termination-of-parental-rights proceedings. *See, e.g.,* Minn.Stat. § 260C.163, subd. 3(a) (2008):

"The child, parent, guardian or custodian has the right to effective assistance of counsel in connection with a proceeding in juvenile court."

days in jail, stayed on condition that the County pay the respective attorneys. The County appealed from this order but voluntarily dismissed its appeal after the court of appeals questioned whether the matter was ripe for appeal.

The County then paid all but $50 of each attorney's outstanding invoices and agreed that the County had not complied with the district court's order. The County asked the district court to hold it in contempt. By an order filed on June 1, 2009, the chief judge again held the county auditor and county commissioners in civil contempt, vacated the stay of sanctions imposed by the March 31, 2009, order and further stayed the imposition of sanctions pending appeal. The County timely appealed to the court of appeals and sought accelerated review. We granted the County's petition for accelerated review.[2]

█ As a preliminary matter, the County challenges several of the district court's findings of fact and conclusions of law on procedural grounds, as clearly erroneous, or as based on information outside the record on appeal. The district court's decision to invoke its contempt powers is subject to reversal for abuse of discretion. *Mower County Human Servs. v. Swancutt,* 551 N.W.2d 219, 222 (Minn.1996). We will reverse the factual findings of a civil contempt order only if findings are clearly erroneous. *Id.; see also* Minn. R. Civ. P. 52.01. However, a party's failure to obey an unlawful order is not a basis for a finding of contempt. *Wojahn v. Halter,* 229 Minn. 374, 382, 39 N.W.2d 545, 549 (1949).

Our ultimate decision in this case does not depend on the factual determinations made by the district court other than those

relating to the County's failure to pay all of the fees ordered, which the County does not dispute. It is therefore unnecessary for us to resolve the County's challenges to the district court's findings of fact. However, to dispel any notion that the proceedings below were procedurally deficient, we will briefly address the County's concerns.

█ First, the County challenges the conclusion in the district court's order to show cause that the County "has the present and ongoing ability to pay attorneys' fees of court-appointed counsel in the child protection cases referenced herein." The County complains that this conclusion was entered without opportunity for the County to present any evidence on the subject.

█ A civil contempt proceeding must comply with certain procedural requirements, including that the court's order "clearly define[ ] the acts to be performed" and that "the party charged with nonperformance be given an opportunity to show compliance or his reasons for failure." *Hopp v. Hopp,* 279 Minn. 170, 174, 156 N.W.2d 212, 216 (1968). The County availed itself of its right to provide the district court with information about its ability to comply with the court's order. In response to the order to show cause, the County submitted affidavits from each of the county commissioners, the County's financial manager, the county auditor, and the county administrator, all describing the financial condition of the County. We therefore reject the County's argument that it had no opportunity to present evidence during the civil contempt proceedings as to its financial condition.

The County further complains that the district court's finding that the State Board of Public Defense is not adequately

---

**2.** None of the respondent parents or their former counsel made appearances in this appeal.

funded "ignores the State Board of Public Defense's ability to seek alternative funding like grants or revenues." The Board was not a party to these proceedings and, although neither the County nor the parents presented direct evidence to the district court regarding the Board's financial condition, at oral argument the County did not dispute that the Board currently is significantly underfunded. However, as we explain in this opinion, we do not decide this case based on an assessment of relative financial needs and resources of the Board and the County, but upon the provisions of applicable statutes. Therefore, any finding by the district court regarding the financial condition of the public defense system is immaterial to our resolution of this case.

Finally, the County asserts that in the March 31, 2009, order holding the County in contempt, which formed the basis for the County's first appeal, the district court improperly took judicial notice of a July 15, 2008, order of the Itasca County District Court in another juvenile protection case. In the Itasca County case, the Itasca County District Court appears to have concluded, among other things, that "[s]tate public defenders are not mandated to represent parents in juvenile protection cases" and that courts "have the authority, where appropriate, to appoint counsel at county expense for parents in juvenile protection cases." In addition, it appears that elsewhere in the Itasca County case, the district court cited its own "recollection" of the circumstances under which the State Public Defender began representing parents in juvenile protection cases. However, the June 1, 2009, contempt order issued by the Crow Wing County District Court that is on appeal in this case does not recite any findings or factual statements from the Itasca County District Court's order. We therefore reject the County's argument that, in holding the County in

civil contempt, the Crow Wing County District Court took improper judicial notice of facts outside the record.

Having addressed the County's factual and procedural challenges, we turn to the merits of the County's legal arguments. The County raises essentially three legal issues: (1) whether the district court erred in appointing private counsel, rather than public defenders, for the indigent parents in the juvenile protection proceedings; (2) whether the County is responsible for paying for private counsel appointed for indigent parents in juvenile protection proceedings; and (3) whether the district court's appointment of private counsel for indigent parents in juvenile protection proceedings at the County's expense violates the Separation of Powers Clause of the Minnesota Constitution. We address each argument in turn.

## I.

■ We turn first to the question of whether the district court erred in appointing private counsel, rather than public defenders, for the indigent parents in these juvenile protection proceedings. We begin by discussing the statutory basis for the appointment of counsel for parents.

■ Statutory interpretation is a question of law that we review de novo. *City of W. St. Paul v. Krengel*, 768 N.W.2d 352, 356 (Minn.2009). Our goal in statutory interpretation is to ascertain and effectuate legislative intent. Minn.Stat. § 645.16 (2008); *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003). If a statute is unambiguous, we interpret the text of the statute according to its plain language. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn.2001). If a statute is ambiguous, we apply canons of construction to discern the Legislature's intent. Minn.Stat. § 645.17

(2008). A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *All Parks Alliance for Change v. Uniprop Manufactured Hous. Cmtys. Income Fund,* 732 N.W.2d 189, 193 (Minn.2007).

The right to counsel is of constitutional dimension in certain circumstances. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (recognizing constitutional right to counsel in criminal proceedings). In other contexts, the right to counsel is not grounded in the Constitution, but is instead based on either statutory provisions or the exercise of the inherent power of the courts. *See, e.g.,* Minn.Stat. § 257.69, subd. 1 (2008); *Hepfel v. Bashaw,* 279 N.W.2d 341, 341 (Minn. 1976) (paternity cases); Minn.Stat. § 253B.07, subd. 2c (2008) (civil commitment matters); Minn.Stat. § 524.5–304(b) (2008) (guardianship matters); *Cox v. Slama,* 355 N.W.2d 401, 403–04 (Minn.1984) (civil contempt proceedings); *State v. Borst,* 278 Minn. 388, 397, 154 N.W.2d 888, 894 (1967) (invoking inherent power of court to provide counsel in misdemeanor cases).

Minnesota law guarantees the right of parties to be represented by counsel in juvenile protection proceedings. Minnesota Statutes § 260C.163, subd. 3(a) (2008), provides that "[t]he child, parent, guardian or custodian has the right to effective assistance of counsel in connection with a proceeding in juvenile court." In subdivision 3(b), the statute provides for court-appointed counsel for the parties:

> Except in proceedings where the sole basis for the petition is habitual truancy, if the child, parent, guardian, or custodian desires counsel but is unable to employ it, the court shall appoint counsel to represent the child who is ten years of age or older or the parents or guardian

in any case in which it feels that such an appointment is appropriate.

Minn.Stat. § 260C.163, subd. 3(b) (2008).

Section 260C.163, subdivision 3(b), does not specify whether counsel appointed for the parents or guardian is to be a public defender or private counsel. However, the Legislature was not completely silent on the subject. Section 260C.163, subdivision 3(c), provides for the appointment of a public defender or other counsel before out-of-home placement of a truant child can be ordered:

> In any proceeding where the sole basis for the petition is habitual truancy, the child, parent, guardian, and custodian do not have the right to appointment of a public defender or other counsel at public expense. However, before any out-of-home placement, including foster care or inpatient treatment, can be ordered, the court must appoint a public defender or other counsel at public expense in accordance with paragraph (b).

Minn.Stat. § 260C.163, subd. 3(c) (2008). Because we read particular statutory provisions "in context with other provisions of the same statute in order to determine the meaning of the particular provision," *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005), the express references in subdivision 3(c) to both "public defender" and "other counsel at public expense" demonstrate legislative acknowledgment that for some parties in juvenile protection proceedings, a public defender would be appointed and, for other parties, "other counsel" would be appointed. However, neither subdivision 3(b) nor 3(c) specifies which party receiving appointed counsel is to be represented by a public defender and which is to be represented by "other counsel."

To determine which parties in juvenile protection proceedings are entitled to representation by public defenders, we turn to

Minn.Stat. ch. 611 (2008). Minnesota Statutes § 611.14 (2008) lists the persons who are "entitled" to be represented by a public defender. Those persons include indigent persons who are charged with a crime, who are appealing a criminal conviction, or who are subject to revocation of a stay in a criminal case. *Id.* In addition, section 611.14 includes in the list of persons entitled to be represented by a public defender "a minor ten years of age or older who is entitled to be represented by counsel" in juvenile delinquency or juvenile protection proceedings:

The following persons who are financially unable to obtain counsel are entitled to be represented by a public defender:

(1) a person charged with a felony, gross misdemeanor, or misdemeanor including a person charged under sections 629.01 to 629.29 [dealing with extradition];

(2) a person appealing from a conviction of a felony or gross misdemeanor, or a person convicted of a felony or gross misdemeanor, who is pursuing a postconviction proceeding and who has not already had a direct appeal of the conviction;

(3) a person who is entitled to be represented by counsel under section 609.14, subdivision 2 [proceedings to revoke probation]; or

(4) a minor ten years of age or older who is entitled to be represented by counsel under section 260B.163, subdivision 4 [juvenile delinquency proceedings], or 260C.163, subdivision 3 [juvenile protection proceedings].

Minn.Stat. § 611.14. Correspondingly, Minn.Stat. § 611.26, subd. 6 (2008), provides that the district public defender is to represent minors ten years of age or older in juvenile court "when so directed by the juvenile court":

The district public defender shall represent, without charge, a defendant charged with a felony, a gross misdemeanor, or misdemeanor when so directed by the district court. The district public defender shall also represent a minor ten years of age or older in the juvenile court when so directed by the juvenile court.

Sections 611.14 and 611.26, taken together, specifically provide that minors ten years of age and older are entitled to representation by district public defenders in juvenile protection proceedings and require the district public defender to undertake such representation when directed by the court. However, section 611.14 does not list parents among those entitled to a public defender in juvenile protection proceedings. Nor does section 611.26 require the district court to appoint a public defender to represent—or require a public defender to assume representation—of parents in juvenile protection proceedings. In the absence of express authorization, we decline to hold that parents have the right under either section 611.14 or section 611.26 to the appointment of a public defender to represent them in juvenile protection proceedings.

The County argues that despite the lack of an express authorization, a public defense for parents is mandatory by implication, and the courts possess no authority to appoint anyone other than a public defender to provide that representation. This argument is based on Minn.Stat. § 611.16 (2008), which provides that a person described in Minn.Stat. § 611.14 or "any other person entitled by law to representation" may request appointment of a public defender. The County argues that, because a party entitled to representation by counsel may request the appointment of a public defender, appointment of a public defender is mandatory. The County's ar-

gument takes the language of section 611.16 too far and ignores the more specific statutory provisions—Minn.Stat. §§ 611.14 and 611.26—which specify those parties a public defender is required to represent.

In addition, if we were to accept the County's argument concerning the construction of section 611.16, then we would necessarily also conclude that a public defender is required to provide representation in all other matters in which the legislature has provided a right to counsel. Yet the County acknowledges that it remains financially responsible for representation of litigants in civil commitment, child support, civil contempt, paternity actions and other civil actions where appointment of counsel is required by statute.[3] This admission significantly undercuts the County's argument.

Although Minnesota Statutes § 611.16 authorizes a request for the appointment of a public defender by "any other person entitled by law to representation by counsel," as well as those persons listed in section 611.14, it is Minn.Stat. § 611.18 (2008) that authorizes the district court to actually appoint a public defender. Under section 611.18, the appointment of a public defender is required "[i]f it appears to a court that a person requesting the appointment of counsel satisfies the requirements of this chapter," that is, Minn.Stat. ch. 611:

> If it appears to a court that a person requesting the appointment of counsel satisfies the requirements of this chapter, the court shall order the appropriate public defender to represent the person at all further stages of the proceeding through appeal, if any. For a person appealing from a conviction, or a person pursuing a postconviction proceeding and who has not already had a direct appeal of the conviction, according to the standards of sections 611.14 and 611.25, subdivision 1, paragraph (a), clause (2), the state public defender shall be appointed. For a person covered by section 611.14, clause (1), a district public defender shall be appointed to represent that person. If (a) conflicting interests exist, (b) the district public defender for any other reason is unable to act, or (c) the interests of justice require, the state public defender may be ordered to represent a person. When the state public defender is directed by a court to represent a defendant or other person, the state public defender may assign the representation to any district public defender. If at any stage of the proceedings, including an appeal, the court finds that the defendant is financially unable to pay counsel whom the defendant had retained, the court may appoint the appropriate public defender to represent the defendant, as provided in this section.

Minn.Stat. § 611.18. As we noted above, nothing in chapter 611 *requires* the appointment of a public defender for indigent parents in juvenile protection cases.

The record before us does not reflect why public defenders accepted appointments before June 2008 beyond those they were statutorily required to handle. The March 2006 final report of the CHIPS Public Defender Work Group[4] to the Leg-

---

**3.** For example, persons are entitled to counsel at public expense under Minn.Stat. § 253B.07, subd. 2(c) (2008) (mental health commitment proceedings), and Minn.Stat. § 257.69, subd. 1 (2008) (child custody proceedings). In addition, we have held that an indigent parent charged with civil contempt for failure to pay child support is entitled to counsel at public expense, *Cox v. Slama*, 355 N.W.2d 401, 403–04 (Minn.1984), as are indigent defendants in paternity cases, *Hepfel v. Bashaw*, 279 N.W.2d 342, 348 (Minn.1979).

**4.** The CHIPS Public Defender Work Group was convened by the state court administrator

islature noted, among other things, that public defenders were regularly accepting appointments "beyond the statutory mandate for use of public defenders" due, in part, to lack of county funding for representation and lack of attorneys in private practice who were trained in child protection law. CHIPS Public Defender Workgroup, *Final Report* 7 n.11 (Mar. 16, 2006).[5]

The district courts may have turned first to public defenders for the reasons outlined by the CHIPS Work Group—lack of county funding and lack of expertise in the private sector—and public defenders may have accepted such representation because funds were heretofore available to do so. However, we are not asked to opine on the propriety or consequences of the prior actions of the district courts in granting requests for public defender representation in juvenile protection cases—nor on the actions of public defenders in accepting such appointments—and we expressly decline to do so.

We conclude that section 611.16 does not require representation of parents in juvenile protection cases by public defenders. In reaching this conclusion, we are guided by the canon of statutory construction "expressio unius est exclusio alterius"—that the expression of one thing is the exclusion of another. *See In re Common Sch. Dist. No. 1317,* 263 Minn. 573, 575, 117 N.W.2d 390, 391 (1962). The Legislature has enumerated in sections 611.14 and 611.26 those persons entitled in both criminal and other proceedings to the appointment of a public defender, and indigent parents in juvenile protection proceedings are not among those enumerated persons.

The County also contends that, regardless of the terms of the controlling statutes, language in a previous order of this court bars the State Public Defender from unilaterally terminating representation of indigent parents in juvenile protection proceedings. In *In the Matter of the Petition of the Board of Public Defense and the State Public Defender,* No. C8–85–1433 (Minn. Dec. 26, 2003)[6], we denied a petition filed by the Board of Public Defense and the State Public Defender seeking, among other things, an order limiting the number of public defenders appointed in child-protection cases, as well as a prohibition on the appointment of individual public defenders to represent more than one party in any particular child-protection case. In our 2003 order, we did "emphasize that it is for the court, and not the public defender, to appoint counsel in CHIPS proceedings." *Id.* at 5 (citing Minn.Stat. § 260C.163, subd. 3). It is this language that the County cites as having previously determined that public defenders are obligated to represent indigent parents. We find nothing in our 2003 order, however, that addresses the issue raised here—namely whether public defenders are statutorily mandated to represent indigent parents in juvenile protection proceedings.

at the direction of the Legislature to recommend the appropriate assignment and use of limited public defender resources, as well as ways to minimize juvenile protection proceedings through early intervention and other strategies. *See* Act of June 2, 2005, ch. 136, art. 1, § 2, subd. 2, 2005 Minn. Laws 901, 904.

**5.** CHIPS Public Defender Workgroup, Final Report 7 n.11 (Mar. 16, 2006), available at http://www.leg.state.mn.us/docs/2006/Mandated/060267.pdf.

**6.** This order is available at http://www.mncourts.gov/Docu ments/0/Public/administration/AdministrationFiles/ PublicDefenseBoardC8–85–1433/2003–12–26 ¨ OrderPubDef&PubDef.pdf.

Our 2003 order concerning public defense services dealt with a request from the State Public Defender's Office to be relieved, in advance, of some of its mandatory obligations. *See id.* at 1. The focus of the petition that the order resolved was not the scope of representation, but whether the State Public Defender could unilaterally limit required representation. *See id.* We denied the petition, but did not address (nor were we asked to address) the extent of public defenders' mandatory representation obligations. *Id.* at 9.

In our 2003 order, we rejected the request of the State Public Defender's Office that we affirm their actions in limiting representation. "Any directive by the State Public Defender or a chief district public defender as to which party the public defender will represent is a nullity." *Id.* at 5-6. We declined "to place any limitation on the statutory provision for the appointment of the public defender to represent indigents who have a statutory right to counsel in CHIPS proceedings." *Id.* at 5 (citing Minn.Stat. §§ 611.14(4); 260C.163, subd. 3 (2002)). We noted that

> "[l]ack of counsel for any of the parties" during juvenile protection proceedings "not only contravenes the statutory right to counsel, but also increases the likelihood that the cases will be prolonged, and interferes with the court's ability to make sound and timely decisions so that children can be returned to their families of origin or placed in another permanent, stable and nurturing family.

*Id.* But we never expressly addressed the scope of mandatory public defender representation.

Here, we hold that public defender representation of parents is not mandatory. If it were, then the decision of the State Board of Public Defense to refrain from such representation would be as ineffective today as any similar pronouncement was in 2003. But that begs the question not answered then, which we answer now.

We hold that the district court did not err in appointing private counsel, rather than public defenders, for the indigent parents in these three juvenile protection cases. Parents, although entitled by statute to representation by counsel during juvenile protection proceedings, are not entitled as a matter of right to the appointment of a public defender, and the district court is free to appoint private counsel to represent indigent parents of children involved in juvenile protection proceedings.

## II.

■ We turn next to the question of whether the County is responsible for paying for private counsel appointed for the parents. The answer to that question depends on whether the legislature intended the cost of such representation to be the obligation of the counties. We conclude that the legislature did so intend, and clearly so provided by statute.

Minnesota Statutes § 260C.331, subd. 3 (2008), lists the expenses of juvenile protection cases that are "a charge upon the county in which [juvenile protection] proceedings are held." Those expenses include "reasonable compensation for an attorney appointed by the court to serve as counsel." *Id.*, subd. 3(4). Therefore, under the plain language of section 260C.331, the fees of private counsel appointed for indigent parents in juvenile protection proceedings are to be paid by the county in which the juvenile protection proceedings are venued.

The County asserts that a different statute—Minn.Stat. § 260C.007, subd. 22 (2008)—limits its responsibility for the cost of counsel. Subdivision 22 of section 260C.007 defines "legal custody" as "the

right to the care, custody, and control of a child who has been taken from a parent by the court in accordance with the provisions of section 260C.201 [CHIPS proceedings] or 260C.317 [termination of parental rights proceedings]." Subdivision 22 also provides: "The expenses of legal custody are paid in accordance with the provisions of section 260C.331." Minn.Stat. § 260C.007, subd. 22. The County maintains that because nothing in Minn.Stat. § 260C.201 or Minn.Stat. § 260C.317 (2008) refers to providing court-appointed counsel for parents in juvenile protection proceedings at county expense, expenses arising under Minn. Stat. § 260C.163 do not fall within the scope of the County's responsibilities under Minn.Stat. § 260C.331, subd. 3(4).

We do not find this argument persuasive. The reference in section 260C.007, subdivision 22, to sections 260C.201 and 260C.317, does nothing more than help to define "legal custody." We do not read the definition of "legal custody" in section 260C.007, subdivision 22, to limit the expenses that are the responsibility of the County under section 260C.331. In the face of the plain language of section 260C.163, subdivisions 3(a) and (b)—that a parent has the right to appointed counsel in juvenile court—and the plain language of section 260C.331—that the County must pay reasonable compensation for counsel appointed in juvenile protection proceedings—we decline to read into the statute the implied limitation that the County advances.[7]

The County also contends that to interpret section 260C.331, it is necessary for us to consider the amendments over the last two decades to Minn.Stat. chapters 260C, 477 (dealing with state aid to local government), and 611. The County broadly asserts that in these chapters, the Legislature has included in public defense funding the costs of representing parents in juvenile protection proceedings. The County has not persuaded us on this point.

 Resort to legislative history to interpret a statute is generally appropriate only where the statute itself is ambiguous. *Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 8 (Minn.2005). However, the County does not point to any ambiguity in section 260C.331 that requires resort to legislative history for interpretation. The meaning of section 260C.331 is plain: the cost of counsel appointed in juvenile protection proceedings is a county responsibility.

But even if we consider the legislative history arguments that the County advances, we find them unconvincing. In *Kennedy v. Carlson,* 544 N.W.2d 1, 3–4 (Minn.1996), we discussed at length the history and funding of the public defense system in Minnesota.

> Until the late 1980s, the funding of public defender services in Minnesota was primarily a county responsibility. Each of the ten judicial districts in the state was responsible for administering this constitutionally mandated service, and financial resources were provided from property tax revenues. Minn.Stat.

---

7. Amicus curiae Minnesota County Attorneys Association argues that, under Minn.Stat. § 375.1691 (2008), "a court cannot compel a county to pay anything absent a county board's approval." The County does not advance this argument, and we find it to be without merit. That statute deals with timing of county payments, and simply allows a county to defer a court-ordered payment not

included in the current year's budget until the next year's budget is adopted. Any other reading of the statute would negate the power of a court to require a county to comply with a legislatively prescribed obligation to pay for specific items. While MCAA is correct that courts cannot mandate county expenditure of funds without legislative direction, we do not do so in this case.

§§ 611.26, 611.27 (1965). In 1981, the State Board of Public Defense (Board) was created by the legislature to oversee the public defense system and to distribute any funds appropriated by the state for public defense services. *See* Minn. Stat. § 611.215 (1994). In 1989, the legislature temporarily transferred the primary financial responsibility for public defense from the counties to the state. Act of June 3, 1989, ch. 335, art. 1, § 7, 1989 Minn. Laws 2691, 2699–2700. The state's financial responsibility has been extended through July 1, 1997. Minn. Stat. § 611.27, subd. 4 (1995).

The Board is required by statute to recommend to the legislature a budget for statewide public defense services, and then distribute the funds to all public defender offices. Minn.Stat. § 611.215, subd. 2 (1994).... Under the statutory scheme now in effect, the state's contribution to public defense services in Minnesota is expressly limited to the appropriations made to the Board. Minn.Stat. § 611.27, subd. 7 (1994). In addition, the Board is not permitted to fund any particular items or services which were not included within the original district public defender budgets as of January 1, 1990. Minn. Stat. § 611.27, subd. 5 (1994).

(Footnote omitted.)

As the responsibility for public defense was shifted from the counties to the state, state aid to the counties was correspondingly reduced. In 1994, for example, the Legislature ordered state aid to Crow Wing County and the other counties in the Ninth Judicial District reduced by "an amount equal to the cost of public defense services in juvenile and misdemeanor cases, to the extent those costs are assumed by the state for the calendar year beginning on January 1, 1995." Act of May 10, 1994, ch. 636, art. 11, § 1, 1994

Minn. Laws 2170, 2327 (codified as Minn. Stat. § 477A.012, subd. 7(a) (1994) (repealed 1996)). Crow Wing County's state aid was reduced by $128,000. *Id.* (codified as Minn.Stat. § 477A.012, subd. 7(b) (1994) (repealed 1996)).

The County argues that because its state funding was reduced by more than the county was spending to provide representation in misdemeanor and "juvenile" matters in the county, the transfer necessarily included the cost of representing both parents and minors in both juvenile protection and juvenile delinquency cases. However, the legislation to which the County refers shifted responsibility for the cost of public defense services in juvenile and misdemeanor cases only "to the extent those costs are assumed by the state." *Id.* In Minn.Stat. § 611.14, the Legislature specifically provided for state public defender representation of minors in juvenile delinquency cases under chapter 260B and in juvenile protection cases under chapter 260C, but not for parents or guardians. And the legislature amended Minn.Stat. § 611.26, subd. 6, to specifically require district public defenders to represent "a minor in the juvenile court when so directed by the juvenile court," Act of June 4, 1991, ch. 345, art. 3, § 17, 1991 Minn. Laws 2575, 2692 (codified as amended at Minn. Stat. § 611.26, subd. 6 (1992)), but did not similarly require district public defenders to represent parents or guardians in juvenile proceedings. Under these statutory amendments, public defenders assumed the duty of, and the state assumed the cost of, representation of only minors in juvenile matters, not parents or guardians. The County's argument overlooks this statutory distinction.

The County also notes that the Commissioner of Revenue withholds from the annual appropriation to counties a total of $500,000. *See* Minn.Stat. § 477A.03, subd.

2b(a) (2008), *amended by* Act of Apr. 1, 2010, ch. 215, art. 13, § 7, 2010 Minn. Laws ——. These funds are retained to reimburse the Commissioner of Finance in order "to defray the additional costs associated with court-ordered counsel under [Minn.Stat.] § 611.27." *Id.* The County describes this fund as "an alternative service delivery relief valve for the [state public defender's office] should [it] not be able to gear up for all of the increased duties in the assigned juvenile and misdemeanor duties as assigned by the legislature." The County suggests that the legislature intended the funds withheld from the counties under section 477A.03, subd. 2b(a), to supplement funding for the State Public Defender's Office and, in particular, to pay for the cost of public defender representation in juvenile and misdemeanor cases.

But section 611.27, subdivision 11, provides for the appointment of counsel in cases in which "the provision of adequate legal representation, including associated services, is beyond the ability of the district public defender to provide." It is in such cases—those in which public defenders cannot provide representation—that the district court is authorized to appoint private counsel, whose billings are forwarded to the Commissioner of Finance and paid from the $500,000 in county program aid retained for that purpose. *Id.,* subd. 13. Thus, section 611.27 effectively prohibits using the withheld funds to pay public defenders.

The County also argues that the concurrent amendment in 1994 of Minn.Stat. §§ 260.155, 477A.012, 611.16, 611.18, and 611.27 (1992) "reassigned the obligation" for representation of parents to the State Public Defender's Office. We disagree. In 1994, the Legislature amended Minn. Stat. § 260.155 to provide for representation of the child, but did not change at all

the existing representation rights of the parents. *See* Act of May 5, 1994, ch. 576, art. 3, § 21, 1994 Minn. Laws 934, 952 (codified as amended at Minn.Stat. § 260C.163 (2008)). At the same time, the Legislature repealed Minn.Stat. § 477A.012, subd. 6, which contained the offset to county aid for 1992 court and public defender costs. *See* Act of May 5, 1994, ch. 587, art. 3, § 21(b), 1994 Minn. Laws 1043, 1092. However, Minn.Stat. §§ 611.16 and 611.18 were not amended in 1994. Taken as a whole, these statutes, and the claimed changes to them, do not support the County's argument.

The County finally asserts that our court and the State Public Defender's Office are "estopped" from interpreting statutes today in a manner that conflicts with the County's expectations as expressed in correspondence in 1994 and 1995 among various county officials. In the letters referenced by the County, the district court administrator recommended that because of the transfer of representation in misdemeanor cases to the State Public Defender effective January 1, 1995, the County should not renew its full-time and part-time contracts with its contract public defenders. However, because the County continued to be responsible for representation in certain types of cases, such as civil commitments, child support contempt actions, and paternity actions, the court administrator recommended that the County instead contract for services on an hourly basis and suggested an additional appropriation to the county public defender budget to meet the County's responsibilities through the end of the calendar year 1995.

█ The County argues that the district court administrator's 1994 and 1995 letters "document the judicial interpretation of the intent of the 1994 legislature enactments" and "are the equivalent of judicial construction of the 1994 legislative

action." As such, the county argues, the letters "became as much a part thereof as if [they] had been written into [the law] originally." We reject the County's assertion.[8] Nor is there any argument by which the State Board of Public Defense, which neither employed the district court administrator nor was even copied on his correspondence, is bound by the district court administrator's letters.

We are sympathetic to the counties' financial conditions and to the additional burden that representation of indigent parents in juvenile protection cases will place on counties already facing budget shortfalls. However, our task here is limited to interpreting the statutory scheme as enacted by the Legislature. The Legislature has given parents the right to effective assistance of counsel in juvenile protection cases and made the cost of that representation an obligation of the counties.

### III.

 Finally, the County argues that by its "weighing of abilities to raise revenues and shift resources," the district court engaged in "an exercise of shifting taxing obligation burdens and consequently directing appropriations" in violation of the Separation of Powers Clause of the Minnesota Constitution. The County further contends that "[i]nherent in the attempted assumption of appropriation authority is a directive to the county board to levy a tax to support the same." The County accuses the district court of "fashion[ing] a judicial remedy" for what the court perceived as the Legislature's inadequate funding of the state public defense system.

Because we decide this case based solely on the controlling statutory provisions, we need not address the district court's findings as to the relative abilities of the county and the State Board of Public Defense to pay for representation of indigent parents. However, to the extent that the district court based its decision on its perception of the relative abilities of the county and the State Board of Public Defense to raise funds, rather than on the applicable statutes, the court erred. The Legislature makes such policy decisions, and expresses its judgment, in statutes, which courts apply.

The County further argues that the district court could not constitutionally order

---

8. The County cites as authority for this argument the dictionary definition of contemporaneous construction and our opinion in *Roos v. City of Mankato*, 199 Minn. 284, 288, 271 N.W. 582, 584 (1937), in which we observed that "judicial construction of a statute, so long as it is unreversed, is as much a part thereof as if it had been written in to it originally." (Quotation omitted.) Minnesota Statutes § 645.17(4) (2008) provides that to ascertain the intention of the Legislature, the courts may be guided by the presumption that "when a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language." The district court administrator's letters do not represent our construction of the pertinent statutes. *Cf. Anderson–Johanningmeier v. Mid–Minn. Women's Ctr., Inc.*, 637 N.W.2d 270, 276 (Minn.

2002) ("The court of appeals is not the court of last resort with respect to a statute's construction."). Additionally, Minn.Stat. § 645.16(8) (2008), provides that when the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters, "legislative and administrative interpretations of the statute." However, where "the statute is phrased in common terms," we have declined to defer to administrative expertise for its interpretation. *Minn. Microwave, Inc. v. Pub. Serv. Comm'n*, 291 Minn. 241, 245, 190 N.W.2d 661, 665 (1971). Finally, although we recognize that practical construction of a statute by public officials may be entitled to consideration, their interpretations do not bind us in our construction of the language of a statute. *Governmental Research Bureau, Inc. v. St. Louis County*, 258 Minn. 350, 357, 104 N.W.2d 411, 416 (1960).

it to pay court-appointed counsel without violating the separation of powers. The separation of powers is a fundamental aspect of our system of state government, and may not be ignored to achieve even worthy ends. Article III, Section 1, of the Minnesota Constitution divides the government into three distinct departments: legislative, executive, and judicial. "No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." *Id.*

■ Counties are creations of the Legislature. Minn. Const. art. XII, § 3 ("The legislature may provide by law for the creation, organization, administration, consolidation, division and dissolution of local government units and their functions...."). Counties can exercise only those powers expressly granted to them by the Legislature, and those powers "fairly implied as necessary to the exercise of the express powers." *Cleveland v. Rice County*, 238 Minn. 180, 181, 56 N.W.2d 641, 642 (1952). Conversely, counties are required to carry out those functions assigned to them by the Legislature. *See County of Beltrami v. Marshall*, 271 Minn. 115, 120, 135 N.W.2d 749, 753 (1965) (acknowledging the power of the Legislature to require one county to perform, at its own expense, a matter of statewide concern).

■ It does not violate the separation of powers for courts to enforce obligations imposed on counties by the Legislature. *See In re Repair of Judicial Ditch No. 1 of Counties of Clearwater*, 297 Minn. 240, 247, 210 N.W.2d 859, 864 (1973) (reversing the district court's refusal to require the county to pay its share of the cost of ditch repair as required by statute). If the County is obligated by law to pay the cost of counsel for indigent parents in child-

protection and termination-of-parental rights proceedings, the district court's enforcement of that obligation did not violate the separation of powers.

We therefore hold that the district court did not err in holding the County in civil contempt for its failure to obey the district court's previous order to pay the attorney fees of private counsel appointed to represent the indigent parents in the above-captioned juvenile protection cases. We remand these cases to the district court for further proceedings not inconsistent with this opinion.

Affirmed.