*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1474**

In Re the Custody of L.B.O.; Bibi Whited, et al.,
Respondents,

vs.

Kenzie Quinn,
Appellant,

Tyler Ohman,
Respondent,

Rachel Norgaard, et al.,
Respondents.

**Filed June 22, 2026**
**Affirmed**
**Kirk, Judge**[*]

Dakota County District Court
File No. 19HA-FA-18-326

Bibi Whited, Paul Whited, Montville, Maine (pro se respondents)

Kenzie Quinn, Woodbury, Minnesota (pro se appellant)

Tyler Ohman, Maplewood, Minnesota (pro se respondent)

Rachel Norgaard, Bennett Norgaard, Hastings, Minnesota (pro se respondents)

        Considered and decided by Larson, Presiding Judge; Rasmusson, Judge; and Kirk,

Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**KIRK**, Judge

In this third-party custody dispute, appellant-mother argues that: (1) the district court erred by granting third-party custody to respondent-aunt and uncle; (2) the district court erred by repeatedly continuing the hearing on her motion to find respondent-grandparents in contempt for violating the original custody order and by not providing a meaningful remedy in the contempt action; and (3) the cumulative effect of the respondents' violations of court orders and the district court's lack of enforcement of its orders violated her right to procedural due process. We affirm.

## FACTS

Appellant-mother Kenzie Quinn and respondent-father Tyler Ohman[1] are the parents of L.B.O., who was born in February 2017. Respondent-grandparents Bibi and Michael[2] Whited are the child's paternal grandparents. A few months after the child was born, the parents lost their housing and moved in with the Whiteds. In September, mother and father moved out of the Whiteds' home, but the child remained in the Whiteds' care.

In June 2018, the Whiteds filed a petition for third-party custody of L.B.O. The petition alleged that the child had lived with the Whiteds full-time since January 2018. In February 2019, the parties reached an agreement to grant the Whiteds sole legal and sole

---

[1] Tyler did not participate in this appeal.
[2] The district court's record and respondents' brief refer to respondent-grandfather as Michael Whited instead of Paul Whited. The caption on appeal must match the caption used in the district court, but we use respondent's preferred name here. *See* Minn. R. Civ. App. P. 143.01.

physical custody of L.B.O. (the 2019 custody order). Relevant here, mother was awarded weekly parenting time on Saturday mornings from 10:00 a.m. to 12:00 p.m., at an agreed upon location. The written order included a finding that mother struggles with drug addiction and there are ongoing chemical dependency concerns. Accordingly, as a condition of her parenting time, mother could not be "under the influence of any mood-altering substance, including alcohol, during [her] parenting time and in the 24 hours directly prior to [her] parenting time." This provision also allowed the Whiteds to "impose drug screening prior to parenting time to ensure compliance with [the] order, as the best interests of [L.B.O.] so require[d]."

In 2020, the Whiteds moved to Maine with L.B.O. without mother's consent. L.B.O. was in Maine for about three years and, during this time, mother could not exercise her weekly parenting time and had limited contact with L.B.O. other than phone calls. Respondents Rachel and Bennett Norgaard, L.B.O.'s paternal aunt and uncle, visited Maine three times during this period for a week each time.

In September 2023, L.B.O. started living with the Norgaards in Minnesota. The Whiteds and Norgaards felt that contact with mother was dysregulating for L.B.O. and restricted mother's parenting time. Over the years, mother's parenting time has decreased from supervised visits to video calls, to phone calls.

In February 2024, mother filed a contempt motion against the Whiteds and a motion to terminate the 2019 custody order. She asserted that the Whiteds violated the order by moving L.B.O. to Maine, transferring custody to the Norgaards, and failing to provide her court-ordered parenting time or compensatory parenting time, violating the provisions of

3

the order that granted her parenting time and provided for the possibility of compensatory and additional parenting time. The district court determined that mother made a prima facie case and the Norgaards denied the allegations. Mother requested a hearing date that was about two months out, but, for judicial economy, the district court decided to "wrap contempt in with the ultimate hearing."

The Norgaards also filed a motion for permissive intervention because they had an interest in the matter, as they had provided full-time care for L.B.O in the preceding nine months. The district court granted the Norgaards' motion to intervene. The district court also granted the Norgaards temporary legal and physical custody of L.B.O. and the parents parenting time if they produced a negative hair follicle test. The district court reserved ruling on mother's motions to terminate the third-party custody order and to hold the Whiteds in contempt.

The matter proceeded to a three-day evidentiary hearing. Following the evidentiary hearing, the district court denied mother's motion for custody and granted the Norgaards third-party custody. The district court awarded mother parenting time, subject to her meeting certain benchmarks. The court also found the Whiteds in contempt but did not order a remedy other than factoring their actions into its decision.

Mother appeals.

**DECISION**

Mother challenges the district court's rulings related to granting the Norgaards' third-party custody motion and finding the Whiteds in contempt. She argues that: (1) the district court abused its discretion in granting the Norgaards' third-party custody because it improperly found that the Norgaards are interested third parties and erred in weighing the best-interests factors; (2) the district court erred by repeatedly continuing the contempt hearing and by not providing a meaningful remedy; and (3) the cumulative effect of the Whiteds' violations of the court orders and the district court's lack of enforcement of its orders violated her right to procedural due process.

In general, to obtain relief on appeal, mother has the burden to show that the district court erred, that she was prejudiced by the error, and that the prejudice arising from the error was substantial. *See, e.g.*, Minn. R. Civ. P. 61 (requiring district courts to disregard errors that do not affect the parties' substantial rights); *Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (stating that "error is never presumed" and the appellant must affirmatively show that the district court erred); *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (refusing to remand for a de minimis, technical error). With this framework in mind, we address each of mother's arguments in turn.

**I.	The district court acted within its discretion when it granted the Norgaards' motion for third-party custody.**

Mother challenges the district court's decision to award third-party custody to the Norgaards, contending (1) the district court improperly found that the Norgaards are interested third parties, and (2) the district court erred in weighing the best-interests factors.

5

"This court's review of a district court's third-party custody determination is limited to whether the court abused its discretion." *In re Custody of A.L.R.*, 830 N.W.2d 163, 166 (Minn. App. 2013) (citing *Lewis-Miller v. Ross*, 710 N.W.2d 565, 568 (Minn. 2006)). "A district court abuses 'its discretion by making findings unsupported by the evidence or by improperly applying the law.'" *Id.* (quoting *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn. 1985)). And appellate courts "will not set aside a district court's findings of fact unless they are clearly erroneous." *Id.* A finding is clearly erroneous if it is "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted). In reviewing factual findings for clear error, appellate courts (1) "view the evidence in a light favorable to the findings," (2) do not find our own facts or "reweigh the evidence," and (3) do not "reconcile conflicting evidence." *Id.* at 221-22 (quotations omitted).

A.    **Mother did not demonstrate that the district court erred in determining that the Norgaards are interested third parties.**

Minnesota Statutes section 257C.03 (2024) outlines the procedure for third-party custody actions. To establish that they were interested third parties, the Norgaards had the burden to:

> (1) show by clear and convincing evidence that one of the following factors exist:
> (i) the parent has abandoned, neglected, or otherwise exhibited disregard for the child's well-being to the extent that the child will be harmed by living with the parent;
> (ii) placement of the child with the individual takes priority over preserving the day-to-day parent-child relationship because of the presence of physical or emotional danger to the child, or both; or
> (iii) other extraordinary circumstances;

6

(2) prove by a preponderance of the evidence that it is in the best interests of the child to be in the custody of the interested third party; and

(3) show by clear and convincing evidence that granting the petition would not violate section 518.179.

*Id.*, subd. 7(a).

Here, the district court addressed all the statutory requirements and determined that the Norgaards met their burden to show that they were interested third parties for two reasons, even though only one factor was required.[3] First, the Norgaards demonstrated that L.B.O. was abandoned because his parents left him with the Whiteds. The district court concluded that changing custody to mother would be harmful because the original reasons that L.B.O. was abandoned, mainly mother's drug use, had not been addressed. Accordingly, the district court found that the Norgaards demonstrated "*by a preponderance of evidence* that [the parents] did abandon L.B.O. and that placement into their care could harm L.B.O. (factor one)." *See* Minn. Stat. § 257C.03, subd. 7(a)(1)(i).

Second, the district court determined that the Norgaards demonstrated that placement with them takes priority over preserving the day-to-day parent-child relationship. *Id.*, subd. 7(a)(1)(ii). As to father, the district court noted there is a history of violence between the parents, and the Norgaards have successfully sought restraining orders against father. The district court stated that "[t]he argument about [mother] is harder to make," but explained that it had witnessed mother's erratic behavior during trial and

_____

[3] Our analysis focuses on the issues raised on appeal. The Whiteds did not dispute that the Norgaards were interested third parties.

mother "may or may not still be abusing drugs, and has a history of behaving erratically around L.B.O., which is then upsetting for L.B.O. and calls into question her ability to provide stability and safety to L.B.O." Based on these findings, the district court concluded that "the Norgaards *have shown by a preponderance of the evidence* that placement of L.B.O. takes priority over preserving the day-to-day parent-child relationship because of emotional danger to L.B.O.," and "third party placement of [the child] takes priority over preserving the day-to-day parent-child relationship because of emotional danger to [the child] (factor two)." *See Id.*, subd. 7(a)(1)(ii). The district court also determined that there were not "other extraordinary circumstances" (factor three), and that placement with the Norgaards was in the best interests of L.B.O. Minn. Stat. § 257C.03, subd. 7(a)(1)(iii), (b).

Mother argues that the district court erred by determining that the Norgaards are interested third parties, asserting that the district court applied the incorrect burden of proof, the district court's findings do not identify clear and convincing evidence to meet the requirements of section 257C.03, subdivisions 7(a)(i) and (ii), and the district court misapplied the "extraordinary circumstances" standard. These arguments are unavailing.

We acknowledge mother's argument that part of the district court's analysis incorrectly includes the lower "preponderance of the evidence" standard, rather than the clear and convincing standard. But because this argument was raised for the first time in mother's reply brief it is forfeited. *See* Minn. R. Civ. App. P. 128.02, subd. 3 (requiring reply brief to be "confined to new matter raised in the brief of the respondent"); *Hagen v. Schirmers*, 783 N.W.2d 212, 219 (Minn. App. 2010) (declining to consider appellant's argument that district court's order amounted to restriction in parenting time

8

because it was never raised to the district court and raised for the first time in appellant's reply brief.).

Even if we were to consider mother's argument, mother did not demonstrate that any error in the district court's written analysis requires us to reverse. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1987) (refusing to remand for missing findings of fact when "from reading the files, the record, and the court's findings, on remand the trial court would undoubtedly make findings that comport with the statutory language"). The record shows that the district court understood the correct standard. Despite references to preponderance of the evidence, the district court outlined the correct clear-and-convincing standard at the beginning of the conclusions of law in its order. And the district court reviewed the Norgaards' written closing argument which also discussed the correct standard.

When discussing factor two in its written order, the district court stated: "The argument for [mother] is harder to make." This could suggest that the district court might conclude that the evidence on this factor meets the preponderance standard, but not the higher clear and convincing standard. But the Norgaards only needed to meet one of the three factors, and the district court expressed no uncertainty that the parents abandoned L.B.O. (factor one). Accordingly, even if mother did demonstrate that the district court applied the incorrect standard regarding factor two, she did not show that the result would change if we were to remand for new findings. Accordingly, relief is not merited on this point. *See* Minn. R. Civ. P. 61; *Goldman v. Greenwood*, 748 N.W.2d 279, 285 (Minn. 2008) (citing this aspect of Minn. R. Civ. P. 61); *Katz v. Katz,* 408 N.W.2d 835, 839 (Minn.

9

1987) (stating that "[appellate courts] will not reverse a correct decision simply because it is based on incorrect reasons").

Next, mother asserts that the district court erred because it determined that the Norgaards are interested third parties "by relying heavily on unproven allegations by the Whiteds and the Norgaards that [she] struggles with chemical dependency and by criticizing her reluctance to submit to additional drug testing beyond the testing she had already completed." Mother also argues that the district court erred by relying on "disputed allegations regarding [her] supposed 'addiction' over the uncontested testimony from her immediate family denying any knowledge of drug use," rather than "positive drug tests or testimony from witnesses with firsthand knowledge." Mother also maintains that the standard could not be met because "disruption of [L.B.O.'s] established mother-child bond did not originate with [her], but with the actions of third parties who removed him from that relationship." And "because the record shows that [her] contact with [L.B.O.] was limited by third parties rather than voluntarily relinquished, the evidence cannot support a finding of abandonment under either a preponderance of the evidence or a clear and convincing standard."

Each of mother's contentions are disagreements with the district court's credibility determinations and with how the district court weighed the evidence—matters that we cannot reconsider on appeal. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (stating that appellate courts defer to district court credibility determinations). Our "review is not to determine whether the record could support findings other than those made by the district court—it almost always can. Instead, [an appellate court's] task is to review the record 'to

10

confirm that evidence exists to support the decision.'" *In re Child. of L.A.B.*, 30 N.W.3d 136, 142 (Minn. App. 2025) (quoting *Kenney*, 963 N.W.2d at 222). Mother cannot demonstrate clear error by pointing to possible alternative findings that the district court could have made; rather mother "must show that the record lacks the evidence necessary to support the findings the district court actually made." *Id.*

There is ample evidence in the record to support the district court's conclusions of law. The court recognized that the Norgaards and Whiteds limited mother's parenting time. It found that "[mother] seems to have had a decreasing trajectory of parenting time over the years" based on the Norgaards and Whiteds decisions, and that there has been "possible overzealousness in restricting parenting time." The district court also stated that mother has frequently shown a desire to maintain contact with L.B.O. and that she has taken positive steps in her life. But the district court also found it "very concerning" that "[mother] has refused to take additional drug tests that would provide additional confirmation of her sobriety." It noted her behavior during trial was erratic and that she had ample time to complete drug testing but did not do so. And the district court weighed the differing testimony from mother's family and the Whiteds and Norgaards regarding mother's addiction but ultimately concluded that "[mother's] failure to demonstrate her sobriety to the court has been a significant factor keeping her from her son to this point." Based on this record, mother has not shown that the district court's findings are clearly erroneous.

Lastly, the district court did not misapply the "extraordinary circumstances" standard or undermine the parental presumption. Mother argues that the district court departed from constitutional parental presumption and that "[t]ime spent in a nonparent's care, standing alone, does not constitute an extraordinary circumstance sufficient to overcome the parental presumption." She further contends: "By relying on the status quo created through unauthorized actions to justify permanent third-party custody, the district court inverted the statutory framework of § 257C.03 and undermined the constitutional presumption favoring a fit parent."

Mother's argument is unpersuasive because the district court properly analyzed the factors in section 257C.03, subdivision 7, and concluded that the "extraordinary circumstances" standard (factor three) was not met. *See A.L.R.*, 830 N.W.2d at 168-69 (stating because "the parental presumption articulated in the common law is incorporated into chapter 257[,]" and "because the district court applied Minn. Stat. § 257C.03, subd. 7 . . . , the district court did not err by not separately addressing the parental presumption [articulated in the common law] in its custody order").

### B. The district court did not err in its best-interests analysis.

Mother also argues that the district court erred in its best-interests analysis by relying too heavily on the fact that L.B.O. has been in the Norgaards' care since September 2023, a fact that was created by the Whiteds' move to Maine and the transfer of care to the Norgaards in violation of the 2019 custody order, which required the Whiteds to go to court before transferring custody. She contends: "The improper transfer altered the status quo and created the factual circumstances later relied upon to justify third-party custody."

And she maintains: "Treating the Maine relocation and subsequent transfer of care only as a factor in a later best-interests analysis—without ordering any remedy—sends the opposite signal: that custodians may disregard court orders and then rely on the resulting status quo to defend their position in future custody proceedings."

To the extent that mother is arguing that the district court should have given more weight to the Whiteds' behavior (Maine relocation and moving L.B.O. to live with the Norgaards) when conducting its best-interests analysis, this argument does not appear to have been raised with the district court and is forfeited. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts address only those questions previously presented to and considered by the district court). But mother did point out the Whiteds' actions in her amended motion for contempt and in her closing argument. And, as addressed below, the court agreed with mother and found the Whiteds in contempt for violating the custody order and not moving to modify custody through the proper channels.

As the law requires, the district court made "detailed findings on each of the [best-interests] factors and explain[ed] how the factors led to its conclusions and to the determination of the best interests of the child." Minn. Stat. § 257C.04, subd. 1(b) (2024). One of the factors is "the facts and circumstances of the parent's absence." Minn. Stat. § 257.03, subd. 7(b)(4). In analyzing this factor, the district court found that "the facts and circumstances of [the parents'] absence are complicated." The district court found that, "the Whiteds moved L.B.O. across the country to Maine in a manner [that mother] claims not to have consented to," and that the Norgaards were not forthcoming with parental contact after L.B.O. started living with them. It is the district court's

13

responsibility to consider and weigh the evidence, and mother does not provide any authority to support her argument that the district court was required to weigh these facts any differently than it did. *See State, Dep't of Lab. & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to review question that was not adequately briefed); *Brodsky v. Brodsky*, 733 N.W.2d 471, 479 (Minn. App. 2007) (applying *Wintz* in a family-law appeal). Therefore, mother did not demonstrate that the district court abused its discretion in granting third-party custody to the Norgaards because it was in the best interests of L.B.O.

## II.    The district court's contempt decision was not an abuse of discretion.

Mother maintains that the district court erred by (1) repeatedly continuing the contempt hearing and (2) not providing a meaningful remedy. When reviewing a district court's decision to hold a party in contempt, we review the district court's factual findings for clear error and the decision to invoke its contempt power for an abuse of discretion. *Mower Cnty. Hum. Servs. ex rel. Swancutt v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996).

### A.    The district court did not err in scheduling the contempt hearing.

An evidentiary hearing on mother's contempt motion occurred about nine months after it was filed. At the evidentiary hearing, mother stated that she "thought that the contempt [hearing] was supposed to be heard within 60 days of [her] filing it and not concluded [sic] in a whole other case." And when arguing against the Whiteds' motion to dismiss the contempt motion, she maintained that the contempt matter should not have been consolidated with the custody matter.

14

On appeal, mother asserts that the hearing should have occurred within 60 days. She contends that if there had not been such a long delay, "the Whiteds would still have been the legal custodians, and the unauthorized relocation and transfer of care could have been addressed through remedial orders." Minnesota Rule of General Practice 309.01(b)(5) states that the date to appear for an order to show cause hearing should be "no later than 60 days after the issuance of the notice of motion or order to show cause." But the comment to the rule allows a hearing to be held later than 60 days, "where exceptional circumstances are found to exist by the court." Minn. Gen. R. Prac. 309.01(b)(5) cmt.

That requirement was met here. Mother filed her motion to terminate the third-party custody at the same time as her contempt motion. And the court recognized that if two hearings were held, similar witnesses would testify to similar facts at both hearings. Mother does not explain how the outcome would be different had the hearing occurred earlier. *See* Minn. R. Civ. P. 61; *see also Goldman*, 748 N.W.2d at 285. At the time she filed her motion, L.B.O. was already living with the Norgaards, and the court was also considering her motion to modify custody. Even if the court erred in delaying the hearing, any error was harmless because mother did not demonstrate prejudice. Any prejudice caused by the delay was minimized by the district court's interim order, issued about three months after mother filed the contempt motion, granting mother temporary parenting time if she produced negative drug-test results. Accordingly, mother did not demonstrate that the district court erred by consolidating the contempt hearing with her custody motion and not holding an evidentiary hearing within 60 days of the notice of her contempt motion.

15

**B.     Mother did not demonstrate that the district court erred by finding the Whiteds in contempt but not ordering additional remedies.**

Mother also contends that the district court should have ordered additional remedies such as compensatory parenting time, civil penalties, or attorney fees after finding the Whiteds in contempt.

"A civil contempt order is intended to be remedial rather than punitive because its purpose is to coerce compliance with a court order, not to vindicate the authority of the court." *State v. Iron Waffle Coffee Co.*, 990 N.W.2d 513, 519 (Minn. App. 2023) (quotation omitted). After the evidentiary hearing on all the motions, the district court found that the Whiteds were in contempt. And the district court properly found that the purpose of contempt is to secure compliance, and because the child was no longer with the Whiteds "there is no remedial benefits to be gained even if they were found to be in contempt." It explained that the Whiteds no longer have custody of L.B.O., and "[t]he Norgaards would still be able to make their motion for custody as intervenors, regardless of whether the Whiteds acted improperly." The district court also factored the Whiteds' actions into its decision, stating, "the [c]ourt does make note of the fact that there have been past improprieties with respect to making sure [mother] receives ample time with L.B.O., this being the chief example, and does factor it into the decision."

Mother did not ask for compensatory parenting time, civil penalties, or attorney fees in district court, and therefore, we conclude that her argument that the district court should have done more is forfeited. *See Thiele*, 425 N.W.2d at 582. When questioned at the motion hearing about the remedy she was seeking, mother stated that the purpose was "to

16

do it legally . . . because [L.B.O.] was always supposed to be transitioned back to [her]." In her amended contempt motion, mother requested that the district court terminate the current order and give her "full custody and transition the child back to [her]." At the evidentiary hearing, she requested "reversal of custody," or "some kind of custody or . . . follow through with what was supposed to happen." And in her written closing argument, mother did not request a specific remedy but argued that the Whiteds violated the law and should not be able to avoid the consequences of their actions, that the Whiteds no longer have credibility, and that "ruling in favor of the Norgaards will further violate the law."

The record shows that the district court awarded mother the remedy she requested. It awarded her parenting time and found "that it is in the child's best interests that the child be reunified with both birth parents and that both have contact and eventually parenting time with the child according to [the ordered] benchmarks and schedule." In district court, mother never requested the remedies she is seeking on appeal. *See id.*; *see also Annis v. Annis*, 84 N.W.2d 256, 261 (Minn. 1957) (stating that "litigants are bound [on appeal] by the theory or theories, however erroneous or improvident, upon which the action was actually tried below"). For these reasons, mother did not demonstrate that the district court erred by failing to award additional remedies after it found the Whiteds in contempt.

**III. Mother's procedural due-process argument is forfeited.**[4]

Lastly, mother argues that the cumulative effect of the Whiteds' violations of court orders and the district court's lack of enforcement of its orders violated her right to procedural due process. "[P]rocedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *State v. Rey*, 905 N.W.2d 490, 494 (Minn. 2018) (quotation omitted). Because mother did not raise this issue in district court, we consider her procedural due-process argument forfeited and decline to consider it for the first time on appeal.[5] *See Thiele*, 425 N.W.2d at 582; *see also Anderson v. Aitkin Pharm. Servs., LLC*, 5 N.W.3d 123, 139 n.9 (Minn. App. 2024) (applying *Thiele* to a constitutional question).

**Affirmed.**

---

[4] Mother also asserts that the Whiteds and the Norgaards should not have been able to benefit from their lack of compliance with the modification requirement for consent decrees in Minnesota Statutes section 257C.07 (2024), and that "by declining to fashion any relief in response to the unauthorized removal and transfer, the district court abused its discretion and failed to protect the integrity of its own orders, as well as [her] statutory and constitutional rights." Although mother asserted multiple times to the district court that the Whiteds and Norgaards violated the district court's orders, she did not raise these specific arguments, and we conclude they are forfeited on appeal. *Thiele*, 425 N.W.2d at 582. Mother also does not support these arguments with legal authority or describe which statutory and constitutional rights she is referring to, other than the statute pertaining to modification of consent decrees, and we discern no obvious prejudicial error. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 187 N.W.2d 133, 135 (Minn. 1971) (stating an assignment of error based on a "mere assertion" is forfeited unless prejudicial error is obvious).

[5] Mother also does not support her due-process argument with legal authority. Mother relies on *In re Child. of J.B.*, 782 N.W.2d 535, 543-44 (Minn. 2010) for the principle that "cumulative procedural failures may amount to a due-process violation." But *J.B.* does not stand for what mother contends that it does.