**MOWER COUNTY HUMAN SERVICES on Behalf of Kimberly SWANCUTT, Respondents,**

v.

**Mark A. SWANCUTT, Appellant.**

No. C4–95–863.

Court of Appeals of Minnesota.

Nov. 7, 1995.

Review Granted Dec. 20, 1995.

Patrick A. Oman, Mower County Attorney, Robert W. Auron, Assistant, Austin, for respondents.

Lee A. Bjorndal Baudler, Baudler, Maus & Blahnik, Austin, for appellant.

Before DAVIES, P.J., and RANDALL and NORTON, JJ.

## OPINION

DAVIES, Judge.

Appellant challenges both the district court's refusal to modify his child support obligation and the district court's contempt order. We affirm in part, but reverse the contempt order.

## FACTS

Appellant Mark Swancutt is the father of three children, the youngest of whom was born in April 1991. While married, he and his former wife Kimberly Swancutt enjoyed a good living from appellant's farm operation. Still, appellant claims he has made little or no income from farming since his divorce, but has instead shown consistent losses. Because appellant has not supported his chil-

dren, they have relied on Mower County public assistance.

In August 1994, pursuant to Mower County's motion for an upward modification, an administrative law judge (ALJ) increased appellant's child support from $106 per month to $484 per month. The ALJ based this amount on appellant's $1,384 net monthly earnings at a security job he had then held for more than eight months. The ALJ advised appellant that if he left his security job "in order to avoid child support," that income would still be imputed to him. Six days later, appellant voluntarily quit the job.

In March 1995, the district court heard the matter, pursuant to a motion for contempt by Mower County Human Services and appellant's own motion to reduce his child support obligation to $50 per month. The court found that appellant had child support arrearages of $11,035.74 through the date of the hearing. (Since 1987, appellant had made only five child support payments other than when payments were withheld from his security job paycheck.)

The district court further found that appellant was voluntarily unemployed because he quit his security job and had adamantly refused to search for employment off the farm despite his recent history of farm losses and that he thus showed a lack of good faith in not maintaining or obtaining gainful employment. The court ordered judgment against appellant for all child support arrearages, denied his motion to reduce his obligation, and held him in contempt for his failure to pay. The court sentenced appellant to jail, subject to two purge conditions: (1) that appellant pay four months of child support arrearages ($1,936) by March 31, 1995, which he did; and (2) that appellant

> keep himself purged of his contempt by continuing to make his court ordered child support payments along with 20% of the court ordered payment to be payable toward arrearages.

This appeal challenges this second "continuing" purge condition and the refusal to re-

duce child support.[1]

## ISSUES

I. Did the district court abuse its discretion by issuing a continuing prospective contempt order?

II. Did the district court abuse its discretion in denying appellant's motion to modify his child support obligation?

## ANALYSIS

### I.

Appellant contends that the district court erred in its contempt order by requiring that, to avoid jail time, he regularly meet his *future* support obligations. He argues that this requirement will keep him in conditional contempt of court until his youngest child reaches age 18, *i.e.*, until April 2009. Mower County agrees, but argues that a prospective contempt order like this fosters judicial economy by eliminating the first hearing of the two-hearing contempt process.

■ Contempt law requires two hearings before a contemnor may be jailed. *Mahady v. Mahady*, 448 N.W.2d 888, 891 (Minn.App. 1989) (citing *Tell v. Tell*, 383 N.W.2d 678, 684 (Minn.1986); *Westgor v. Grimm*, 381 N.W.2d 877, 880 (Minn.App.1986)). At the first-stage hearing, the district court must do three things. First, to justify a conditional contempt order, the court must determine that the obligor had the ability to pay the obligations as they came due. *Mahady*, 448 N.W.2d at 890 (citing *Hopp v. Hopp*, 279 Minn. 170, 175, 156 N.W.2d 212, 217 (Minn. 1968)). Second, the court must set purge conditions in consideration of the obligor's then-current ability to meet them. *Id.* (citing Minn.Stat. § 518.12; *Hopp*, 279 Minn. at 175, 156 N.W.2d at 217). Third, the court must determine that the threat of confinement is "reasonably likely to produce compliance." *Hopp*, 279 Minn. at 175, 156 N.W.2d at 217.

■ The obligor has a right to a second-stage hearing to determine if the obligor has met or is excused from meeting the purge conditions of the first-stage order. *Mahady*, 448 N.W.2d at 891. At this hearing, the obligor is again given an opportunity to show compliance with the order or to explain the reasons for noncompliance. *Tell*, 383 N.W.2d at 684. At this time, the court must make one final finding: whether the obligor inexcusably failed to comply with the purge conditions. Only if the court so determines may the court adjudge the obligor in contempt and order confinement. *Mahady*, 448 N.W.2d at 891.

■ In this case, the continuing contempt order would eliminate the first-stage hearing on any future nonpayment. Instead, if at any time appellant falls behind in his support payments, the court would need to conduct only a second-stage hearing—at which time it could execute an immediate jail sentence if appellant does not show compliance with his support obligation or an excuse for noncompliance. In other words, appellant can never—until his youngest child reaches majority—completely escape the threat of an immediate second-stage contempt finding. He would be at risk of a *confinement* hearing whenever he missed a monthly support payment.

■ We find this sort of prospective and rolling purge condition unacceptable. Rather, a first-stage contempt order must always be expressly conditioned on appellant's right to purge it in the immediate future. *See generally Hopp*, 279 Minn. at 170, 156 N.W.2d at 216 (purpose of threatening confinement is to compel compliance). In other words, the proceeding must preserve as to future obligations the right to a new first-stage (threatening) proceeding, as well as a second-stage hearing.

■ By this decision, we do not suggest that a district court may not set a purge date in the near future with a purge condition that includes a sum for one or more intervening support payments. For example, we believe in the case of a farmer whose income is seasonal, a district court could, following a

---

1. Any implied challenge to the first purge condition is moot because of appellant's prompt payment of arrearages.

first-stage hearing in September, issue a conditional contempt order setting a December purge date. The court could reasonably include as part of the purge conditions that the farmer pay not only arrearages, but also the monthly support payments to come due between September and December. Such a contempt order would not be viewed as covering future obligations, but rather would have a one-shot purge date in the relatively near future by which time the obligor is to be "up-to-date."

## II.

■ Child support modification orders are reviewed under an abuse of discretion standard. *Hennessy v. Stelton,* 302 Minn. 550, 551, 224 N.W.2d 926, 927 (1974); *Kuronen v. Kuronen,* 499 N.W.2d 51, 53 (Minn.App. 1993), *review denied* (Minn. June 22, 1993). The decision will not be reversed unless it is a "clearly erroneous conclusion that is against logic and the facts on the record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn. 1984).

> Upon a motion to modify a child support award, a court must first determine whether a change of circumstances justifies modification of the existing award.

*Buntje v. Buntje,* 511 N.W.2d 479, 481 (Minn. App.1994) (citing Minn.Stat. § 518.64, subd. 2(a) (1992)).

■ Appellant contends the district court's failure to address his temporary economic situation precludes a determination of imputed income. We disagree. The district court found that appellant was voluntarily unemployed because he adamantly refused to search for employment other than farming, despite his recent history of farm losses. The court noted that appellant quit his job six days after the ALJ indicated income from that job would be imputed to him if he quit. The court then found that appellant showed a lack of good faith in not "maintaining or obtaining gainful employment" to enable him to meet his support obligation. The court expressly considered appellant's change in circumstances, but found that it did not make the existing order unreasonable or unfair.

■ Therefore, too, the court was not required to apply the guidelines. The court need apply the statutory support guidelines only if the obligor shows a substantial change of circumstances that makes the existing order unreasonable and unfair. Minn.Stat. § 518.64, subd. 2(b) (1994); *Buntje,* 511 N.W.2d at 481.

■ Contrary to appellant's contention, the district court expressly took note of his claim that he hoped to turn his financial situation around in three to five years by going to school to improve his farming skills. In a support modification case, the obligor

> has the burden of proving he made a good-faith effort to meet his child support obligation, but could not do so. If the [obligor] unjustifiably self-limits his income, his earning *capacity* may be considered.

*Anderson v. Anderson,* 450 N.W.2d 384, 386 (Minn.App.1990) (emphasis added) (citations omitted). In this case, appellant's speculations (that in three to five years he will be able to make a living as a farmer) are too vague to overturn the district court's finding that he has shown a lack of good faith. Moreover, this vagueness, coupled with the fact that appellant ignored the ALJ's warning about quitting his security job, does not make the finding of a lack of good faith an erroneous conclusion that is against logic and the facts in the record.

■ Appellant also contends that it is an abuse of discretion, mandating remand, for the district court to fail to state that it had considered a loan restructuring agreement appellant entered into to handle a December 1995 balloon payment. We disagree. Appellant appears to ignore the threshold requirements of the modification statute. Although it is true that Minn.Stat. § 518.551, subd. 5(d) (1994), allows a court, under certain conditions, to consider debts to private creditors when modifying a support obligation, the debt still must reflect a substantial change in circumstances from the time support was first ordered or last modified. *Johnson v. Fritz,* 406 N.W.2d 614, 616 (Minn. App.1987) (citing *Wiese v. Wiese,* 295 N.W.2d 371, 372 (Minn.1980)). Here, appellant's loan has been in existence since 1991, and appellant has known the date of the balloon payment obligation since that time. The loan restructuring, therefore, does not reflect any

real change of circumstances since September 6, 1994, the date of the child support order appellant moves to modify. The time for appealing it has long since expired. *See* Minn.R.Civ.App.P. 104.01 ("[A]ppeal may be taken from a judgment within 90 days after its entry and from an order within 30 days * * *.); *Dieseth v. Calder Mfg. Co.*, 275 Minn. 365, 370, 147 N.W.2d 100, 103 (1966) (holding that appealable order is final after time for appeal has expired). The district court properly rejected the loan restructuring as a changed circumstance.

## DECISION

The district court correctly refused to modify appellant's child support obligation because of a change of circumstances.

The district court, however, erroneously issued a contempt order with a rolling purge date, depriving appellant of the first-stage contempt hearings to which he would be entitled. That contempt order is reversed.

**Judgment affirmed in part and reversed in part.**