*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1517**

Coco's Heart Dog Rescue,
Respondent,

vs.

Ann Marie Hawthorne,
Appellant.

**Filed April 13, 2015
Affirmed
Hooten, Judge**

Washington County District Court
File No. 82-CV-14-2100

John C. Conard, Brian R. Christiansen, Hellmuth & Johnson, PLLC, Edina, Minnesota (for respondent)

Barry S. Edwards, Barry S. Edwards Law Offices, Minneapolis, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Stauber, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges the district court's decision to hold her in contempt of court, asserting that the district court erred by designating the proceeding as one involving a constructive civil contempt, instead of constructive criminal contempt, and, in doing so,

failed to provide her with the required procedural safeguards. Because the district court did not err by using its constructive civil contempt powers to conduct this proceeding and impose accompanying sanctions, and because the district court considered and rejected appellant's criminal contempt arguments before holding her in contempt, we affirm.

## FACTS

This case arises from a dispute between appellant Ann Marie Hawthorne and respondent Coco's Heart Dog Rescue over the ownership of a rescue dog named Dixie. In January 2014, Hawthorne signed a foster-home agreement with Coco's Heart, in which she agreed to temporarily care for and house rescue dogs while Coco's Heart attempted to place the animals with permanent owners. Sometime after she signed the agreement, Hawthorne began providing foster care to Dixie for Coco's Heart. The parties eventually disagreed as to the proper course of veterinary care for Dixie, and Coco's Heart attempted to regain possession of Dixie. Hawthorne refused to return Dixie; instead, she claimed ownership of the dog and sought to transfer Dixie to another rescue agency.

In April 2014, Coco's Heart brought a replevin action against Hawthorne for the wrongful possession of Dixie. In conjunction with a motion seeking to recover Dixie from Hawthorne prior to a hearing under Minn. Stat. § 565.24, subd. 1 (2014), the executive director of Coco's Heart submitted an affidavit, along with the foster-home agreement with Hawthorne and other supporting documents, in which she explained that according to the terms of the agreement, Dixie was owned by Coco's Heart, Hawthorne could not adopt Dixie unless such adoption was approved by Coco's Heart, and that

2

Hawthorne could not transfer Dixie to another rescue facility or home. There is nothing in the record on appeal indicating that Hawthorne responded to this motion.[1]

On May 1, 2014, the district court held a review hearing and ordered Hawthorne to either return Dixie or deposit a $700 bond subject to three conditions: (1) Dixie being alive and well; (2) Dixie would not be transferred or transported to any other person or entity absent a court order; and (3) Hawthorne was to appear before the district court on May 7, 2014. Hawthorne did not return Dixie or post a bond, but appeared with her attorney at the May 7 hearing. After that hearing, the district court ordered Hawthorne to surrender Dixie to Coco's Heart. The district court further ordered that the Oakdale Police Department and a person from Coco's Heart were to retrieve Dixie from Hawthorne's home and, in the event Hawthorne did not surrender the dog or disclose where the dog was, Hawthorne was to personally appear before the district court on May 9 and show cause as to why she should not be held in contempt. Hawthorne did not post a bond, surrender Dixie, or disclose Dixie's whereabouts.

Coco's Heart moved the district court for an order of contempt against Hawthorne and requested damages and attorney fees under Minn. Stat. § 588.11 (2014). In response

---

[1] The record does not contain any transcripts of any of the hearings that took place before the district court. It is appellant's responsibility to order a transcript "of those parts of the proceedings not already part of the record which are deemed necessary for inclusion in the record." Minn. R. Civ. App. P. 11.02, subd. 1(a). When an appellant fails to provide a transcript, appellate review is "limited to whether the trial court's conclusions of law are supported by the findings." *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995). Accordingly, the record on appeal consists of the written submissions of the parties to the district court and the district court orders.

3

to this motion for contempt, an evidentiary hearing was held on June 9, 2014. At the hearing, both parties were represented by counsel.

According to the July 7 district court order issued after the hearing, Hawthorne testified that she had not returned Dixie because she was confused as to the requirements of the district court's May 7 order. Hawthorne further claimed that Dixie had been stolen from her home shortly after the May 7 hearing and that she had reported this theft to the police. However, the district court found that there was no "legitimate dispute" about the ownership of Dixie, Hawthorne's understanding of its orders, or whether Dixie was "stolen." In finding that Hawthorne's testimony lacked credibility, the district court pointed out several inconsistencies in her testimony about the theft of Dixie, including the fact that nothing else in her home was stolen, even though there were expensive electronics in the home, there were no signs of forced entry, and her claim that she had earlier lost her house keys and garage door opener was not communicated to the police when she reported the theft. The district court also found that in addition to the lack of evidence corroborating her story, Hawthorne had posted on the Internet soon after the May 7 hearing that she had been ordered to surrender Dixie and "fear[ed] for this dog's safety," contradicting her testimony that she wanted to return the dog to Coco's Heart. The district court made a preliminary determination that Coco's Heart had incurred a minimum of $4,550 in damages and attorney fees.

Based upon these findings and conclusions regarding Hawthorne's "incredible testimony," the district court held her in contempt for failure to comply with its prior orders and sentenced her to 90 days in jail, with the sentence to commence on August 18,

4

2014. The contempt order further provided that Hawthorne could purge the contempt and not have to serve the 90-day jail sentence if she either surrendered Dixie to Coco's Heart or paid damages and attorney fees to Coco's Heart by August 18, 2014.

After leaving the record open for further submissions only on the issue of attorney fees, the district court entered an award of damages and attorney fees in favor of Coco's Heart in the amount of $4,550 on August 27 and ordered that "all other conditions and findings and conclusions" in its July 7, 2014 order "remain[ed] in full force and effect." In accordance with the district court's order that there was to be no "further reason for delay," judgment was entered on August 28, 2014. There is no evidence in the record that Hawthorne paid the damages and attorney fee award or returned Dixie to Coco's Heart, and the record indicates that she began her sentence on the contempt finding and brought this appeal.

## D E C I S I O N

### I.

After Hawthorne's appeal was filed, this court ordered the parties to serve and file informal memoranda addressing whether the issues raised in Hawthorne's brief were presented to and decided by the district court and, if not, whether the appeal should be dismissed on the ground that Hawthorne improperly raises issues for the first time on appeal. The primary argument Hawthorne raises in this appeal is that the district court erred in treating her constructive contempt proceeding as a civil contempt, rather than a criminal contempt, and that she was not afforded the procedural safeguards afforded in a constructive criminal contempt proceeding.

5

It appears from the record that shortly after the evidentiary hearing, the parties filed submissions with the district court on June 30, 2014. In a proposed order, presumably submitted by Hawthorne's attorney, there is a finding that Coco's Heart "appeared to be seeking a criminal sanction" for contempt, and also a conclusion of law stating that "when a party faces criminal sanctions for constructive contempt, her case 'should not be prosecuted by attorneys other than those representing the state,'" quoting *Peterson v. Peterson*, 278 Minn. 275, 281, 153 N.W.2d 825, 830 (1967). The submission proposed that the motion for contempt would be denied and the replevin action would be dismissed without prejudice. In the district court's subsequent July 7 contempt order, it cited numerous civil cases in support of its conclusion that the hearing involved constructive civil contempt and that it had "the power to punish contempt by fine and/or imprisonment" under Minn. Stat. § 588.02 (2014).

We conclude, based upon this proposed order and the district court's July 7 contempt order, that Hawthorne's argument on appeal was presented to the district court, and the district court implicitly considered and rejected Hawthorne's argument by specifically finding that this was a constructive civil contempt proceeding which included imprisonment if the purge conditions were not satisfied.[2] Accordingly, we may review these issues here. *See Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 673 (Minn.

---

[2] The July 7 contempt order only left the record open for the parties' submissions regarding damages and attorney fees. Because the district court had already ruled on the contempt motion in its July 7 order, it was not necessary for the district court to reconsider these same issues in its August 27 order. In fact, the later order provided that other than the confirmation of the award of damages and attorney fees, "[a]ll other conditions and findings . . . in [the] order dated July 7, 2014 remain in full force and effect."

6

2001) ("[A] reviewing court generally may consider only those issues that the record shows were presented to and considered by the [district] court.").

## II.

Hawthorne's primary argument on appeal is that the district court erred in its contempt order by imposing *criminal*, not *civil*, contempt conditions without following criminal contempt procedures. We review a district court's use of contempt powers for an abuse of discretion and reverse the fact findings of a contempt order only if those findings are clearly erroneous. *In re Welfare of J.B.*, 782 N.W.2d 535, 538 (Minn. 2010).

Both parties acknowledge that the district court correctly found constructive contempt in this case, but Hawthorne contends that the sanctions imposed by the district court show that the contempt was criminal in nature. We look to "the court's purpose in sanctioning the contemnor" in determining whether contempt is civil or criminal. *State v. Martin*, 555 N.W.2d 899, 900 (Minn. 1996). Contempt designed to punish past misconduct is traditionally regarded as criminal contempt, *id.*, while "[c]ivil contempt sanctions are intended to operate in a prospective manner and are designed to compel future compliance with a court order." *Mower Cnty. Human Servs. v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996) (quotation omitted). The civil form of the underlying proceeding and the contempt order's use of a "purge provision" are two indications that a contempt order is civil, not criminal. *Id.* A contempt order that includes a determinate jail sentence is civil in nature if accompanied by a purge clause. *See id.*

Hawthorne argues that the contempt order was criminal because it contained no real purge clause, as her only options were to "go to jail or pay attorney's fees," and that

7

she could not purge the contempt by producing a dog that was stolen from her. She also alleges that the determinate 90-day jail sentence renders the order criminal. But, Hawthorne misstates the conditions of the district court's order, and an examination of the order shows that it was civil in nature.

Both the district court's July 7 and August 27 orders made clear that Hawthorne could purge the contempt by returning Dixie to Coco's Heart:

> Pending entry of a money judgment against [Hawthorne,] [Hawthorne] may rid her[self] of this contempt finding and satisfy the same and not have an obligation to pay to [Coco's Heart] any further money judgment by securing and delivering to [Coco's Heart] the live dog Dixie . . . .

Both orders then provided that Hawthorne "shall be deemed to have fully complied with this contempt order," with the required payment and jail sentence vacated, if she returned Dixie to Coco's Heart. Contrary to Hawthorne's contentions, she merely needed to return Dixie to Coco's Heart in order to avoid the contempt sanctions. And while she claims that such return was impossible due to the alleged theft of Dixie from her home, the district court rejected her testimony that the dog had been stolen. Because Hawthorne failed to order a transcript of that hearing, she cannot challenge this finding on appeal. *See Mesenbourg*, 538 N.W.2d at 494. Even if she could dispute the district court's findings, we would defer to the district court's determination that her claim that Dixie was stolen lacked credibility. *See Szarzynski v. Szarzynski*, 732 N.W.2d 285, 298 (Minn. App. 2007). The existence of the purge clause also refutes her contention that the determinate 90-day sentence set by the district court indicates criminal contempt. *See Mower Cnty.*, 551 N.W.2d at 222. A final indication of civil contempt is that the order

8

grew out of a civil replevin action, not a criminal prosecution. *See id.* (providing that underlying proceeding was a civil matter).

We conclude that the district court's contempt orders were civil, not criminal in nature, as they were designed "to induce future performance of a valid court order, not to punish for past failure to perform." *Zaldivar v. Rodriguez*, 819 N.W.2d 187, 196 (Minn. App. 2012) (quotation omitted). Hawthorne held "the keys to the jail," *Mower Cnty.*, 551 N.W.2d at 224, and her continued unwillingness to comply with the district court's mandate that she return Dixie to Coco's Heart does not transform this civil contempt into criminal contempt. The district court did not abuse its discretion by holding Hawthorne in constructive civil contempt.

### III.

Hawthorne further argues that the district court did not follow required due-process procedures in holding her in contempt. Because we conclude that the district court held her in constructive civil contempt, we address only her arguments as to civil contempt. While the full panoply of criminal due-process protections are not required in civil contempt proceedings, "notice and an opportunity to be heard" must be afforded to contemnors. *Id.* at 223. Minnesota caselaw has expanded the notice and hearing requirements and prescribed that a civil contempt proceeding must meet the following requirements:

> (1) the court has jurisdiction over the subject matter and the person;
> (2) a clear definition of the acts to be performed;
> (3) notice of the acts to be performed and a reasonable time within which to comply;

9

(4) an application by the party seeking enforcement giving specific grounds for complaint;

(5) a hearing, after due notice, to give the nonperforming party an opportunity to show compliance or the reasons for failure;

(6) a formal determination by the court of failure to comply and, if so, whether conditional confinement will aid compliance;

(7) an opportunity for the nonperforming party to show inability to comply despite a good faith effort; and

(8) the contemnor's ability to gain release through compliance or a good faith effort to comply.

*Id.* (quotation omitted).

Hawthorne cites these requirements in her brief, but provides no argument that the district court failed to meet any one of them. Therefore, she appears to have waived this claim. *See In re Estate of Rutt*, 824 N.W.2d 641, 648 (Minn. App. 2012) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." (quotation omitted)), *review denied* (Minn. Jan. 29, 2013).

Even if we were to address this issue, there is no indication that the district court failed to follow the procedural requirements of constructive civil contempt. The district court clearly ordered the return of the dog, the subject of the replevin action, and gave Hawthorne ample opportunity to comply. She failed to do so, Coco's Heart moved to have her held in contempt, and the district court held a hearing at which Hawthorne was given an opportunity to explain her failure to comply. The district court found that Hawthorne could not reasonably explain her noncompliance and determined that a jail sentence and reimbursement to Coco's Heart would induce future compliance, while

10

allowing Hawthorne to purge those sanctions if she returned Dixie.  It was only because of Hawthorne's failure to comply with either of the two purge conditions that she had to serve her jail sentence for contempt.  We conclude that there is no showing that the district court failed to satisfy the procedural requirements of constructive civil contempt.

**Affirmed.**