*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1807**

In re the Custody of M. M. L.
Nathan James Sands, petitioner,
Appellant,

vs.

Sue Mae Lovick,
Respondent,

Dakota County,
Respondent.

**Filed December 27, 2016
Reversed and remanded; motion denied
Halbrooks, Judge**

Dakota County District Court
File No. 19HA-FA-08-907

Roxanne R. Karl, Roxanne R. Karl Law Office, Burnsville, Minnesota (for appellant)

James C. Lofstrom, Lofstrom Law Office, Eagan, Minnesota (for respondent Sue Mae Lovick)

James C. Backstrom, Dakota County Attorney, Lisa D. Kontz, Assistant County Attorney, West St. Paul, Minnesota (for respondent Dakota County)

        Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and

Hooten, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant Nathan James Sands challenges the district court's order issuing new purge conditions on its contempt order and awarding attorney fees to respondent Sue Mae Lovick, arguing that the order contains inadequate findings and that the district court improperly imputed his income. Lovick moves this court for conduct-based attorney fees in connection with this appeal. We reverse and remand the district court's orders and deny Lovick's motion.

## FACTS

Sands and Lovick are the parents of one child, M.M.L. In 2004, the district court awarded joint legal custody of M.M.L. to Sands and Lovick and sole physical custody to Lovick. From 2004 to 2014, cost-of-living adjustments increased Sands's child-support obligation to $664 per month. By 2014, Sands owed approximately $17,000 in arrearages. His child-support obligation increased to $685 per month on May 15, 2015; at that time, he was approximately $24,000 in arrears.

In 2014, Lovick moved the district court to find Sands in civil contempt due to unpaid arrearages. Sands obtained hourly employment from June 2014 until January 2015, when his employment was involuntarily terminated. Immediately following the termination of Sands's employment, Lovick renewed her motion to hold Sands in civil contempt for failure to pay child support and moved the district court for need- and conduct-based attorney fees. In February 2015, Sands moved the district court to modify his child-support obligation; he then applied for unemployment benefits.

After a hearing on Lovick's contempt motion in May 2015, the district court issued a contempt order that was amended on July 9, 2015, to correct substantive and clerical errors. In its amended order for contempt, the district court ordered that Sands be confined to the Dakota County Jail for a period not to exceed 90 days but stayed confinement for two years if Sands complied with the following purge conditions:

> a. Commencing immediately, and based on Mr. Sands' offer, 100% of Mr. Sands' unemployment check payments shall be paid to Respondent, Ms. Lovick. The Court notes that Dakota County may only be able to withhold 60% of the unemployment checks. If Dakota County cannot withhold 100% of Mr. Sands' unemployment checks, Mr. Sands shall issue the remainder of the 100% of his unemployment checks to the Minnesota Payment Center, to then be issued to Ms. Lovick.

> b. Mr. Sands shall find and begin to work with a work readiness program to engage in a good faith effort to find employment.

At a review hearing in August 2015, the district court addressed Sands's motion to modify his child-support obligation and acknowledged that Sands was in compliance with the purge conditions in the contempt order. Because Sands's unemployment benefits were about to expire, the district court issued an order in September that established "new conditions on Mr. Sands' stayed sentence of contempt from the amended order dated 7/9/2015." These new conditions altered Sands's child-support obligation, requiring him to pay $528 per month, including arrears payments. The district court also ordered Sands to "pursue seasonal employment in the event that he does not find a full-time position." This appeal follows.

3

# D E C I S I O N

## I.

As a threshold matter, respondent Dakota County argues that the district court's September order is not appealable because it only modifies purge conditions of an existing conditional contempt order and does not modify Sands's child-support obligation. A conditional contempt order is not appealable because it is not a final order. *Becker v. Becker*, 300 Minn. 512, 513, 217 N.W.2d 849, 850 (1974). But an order that modifies child-support obligations is appealable. Minn. R. Civ. App. P. 103.03(h).

Minn. Stat. § 518A.26 (2014) does not define what constitutes a child-support-modification order. But we may look beyond the label of an item and identify it based on its nature or purpose. *See, e.g.*, *Graphic Arts Educ. Found. v. State*, 240 Minn. 143, 146, 59 N.W.2d 841, 844 (1953) ("[T]he labeling of a conclusion of law as a 'finding of fact' is not determinative of its true nature, and it need not be considered a finding by the appellate court."); *Kellen v. Kellen*, 367 N.W.2d 648, 650-51 (Minn. App. 1985) (concluding that shifting the costs of visitation from the non-custodial parent to the custodial parent essentially modifies the terms of child support).

Here, the district court's order "serves to issue new conditions on Mr. Sands' stayed sentence of contempt from the amended order dated 7/9/2015." But it also modified his child-support obligation from $685 per month, excluding arrears payments, to $528 per month, including arrears payments. Moreover, both parties addressed arguments with respect to Sands's motion to modify his child-support obligation at the August review hearing, and the district court stated that the new amount of Sands's child

4

support would be $440 per month. Because the order changed Sands's child-support obligation and the district court acknowledged the new amount on the record, we conclude the September order effectively modified Sands's child-support obligation and is appealable. Moreover, on this record, it is clear that the questions of child support and contempt are, to a significant degree, inseparable. Therefore, in the interests of justice and judicial economy, we will review aspects of the contempt-related portions of the district court's order. *See* Minn. R. Civ. App. P. 103.04 (allowing appellate courts to address questions in the interests of justice); *Wesley v. Flor*, 806 N.W.2d 36, 41 (Minn. 2011) (addressing a question in the interests of judicial economy).

Turning to the substance of the September order, we review its contents and determine whether the district court abused its discretion. Sands first argues that, because he purged the conditions of the contempt order, the district court abused its discretion by issuing new conditions that imposed future obligations and by failing to support its September order with the requisite *Hopp* findings. *See Hopp v. Hopp*, 279 Minn. 170, 156 N.W.2d 212 (1968). The county argues that the district court was not required to make *Hopp* findings because the September order modified the purge conditions of the existing contempt order, and those modified purge conditions were proper. We can only reverse a district court's contempt order if we determine that the district court abused its discretion. *Mower Cty. Human Servs. ex rel. Swancutt v. Swancutt*, 551 N.W.2d 219, 222 (Minn. 1996).

The July contempt order stayed Sands's confinement for a period of two years. At the August review hearing, the district court stated that Sands "was in compliance with

[the purge conditions in the July order]." And it also stated, "The [c]ourt will also, at this point, continue the stay on the contempt. But, certainly, the parties can bring information forward depending upon how these obligations are met in the future." In the September order, the district court issued new conditions on Sands's stayed sentence of contempt. While Sands was in compliance with the purge conditions at the time of the August review hearing, we conclude that he did not purge himself of the July contempt order, and the September order modified the purge conditions on the existing contempt order because it related back to the district court's stayed period of confinement.

Sands relies on a law review article to assert that contempt-purge conditions may not pertain to future obligations and that the district court abused its discretion by requiring him to make future child-support payments. *See* D.D. Wozniak & Cynthia Lehr, *Dealing with a Double-Edged Sword: A Practical Guide to Contempt Law in Minnesota*, 18 Wm. Mitchell L. Rev. 7, 19 (1992). But as the supreme court noted in a case decided after the publication of the article, district courts may include, as a purge condition, the requirement to make future court-ordered child-support payments. *Swancutt*, 551 N.W.2d at 222-23. Because the September order modified the purge conditions of the district court's existing contempt order and because these new purge conditions were proper, we conclude that the district court did not abuse its discretion by including as a purge condition the requirement that Sands make all future child-support payments.

Sands also argues that the district court clearly erred by improperly imputing income to Sands without evidentiary support. We review findings of fact, including a

district court's determination of income and whether a parent is voluntarily unemployed, for clear error. *Newstrand v. Arend*, 869 N.W.2d 681, 685 (Minn. App. 2015), *review denied* (Minn. Dec. 15, 2015); *Welsh v. Welsh*, 775 N.W.2d 364, 370 (Minn. App. 2009). A finding of fact is clearly erroneous if this court "is left with the definite and firm conviction that a mistake has been made." *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000) (quotation omitted).

A district court must calculate a child-support obligation based on potential income if the parent is "voluntarily unemployed, underemployed, or employed on a less than full-time basis, or [if] there is no direct evidence of any income." Minn. Stat § 518A.32, subd. 1 (2014). And the district court must make written findings in every case in which it computes child-support obligations that include, in part, each parent's gross income. Minn. Stat. § 518A.37 (2014). Potential income is calculated according to one of three methods:

> (1) the parent's probable earnings level based on employment potential, recent work history, and occupational qualifications in light of prevailing job opportunities and earnings levels in the community;
> (2) if a parent is receiving unemployment compensation or workers' compensation, that parent's income may be calculated using the actual amount of the unemployment compensation or workers' compensation benefit received; or
> (3) the amount of income a parent could earn working 30 hours per week at 100 percent of the current federal or state minimum wage, whichever is higher.

Minn. Stat § 518A.32, subd. 2 (Supp. 2015).

7

Here, the district court stated, "The Court would feel that a wage of $20 an hour at full-time is an attainable wage by Mr. Sands, a little bit above minimum wage, but perhaps not at his prior wages," and it ultimately imputed income to him "in the amount of $20/hour in a 40 hour work week, resulting in monthly imputed income of $3,464.00." The district court was within its discretion to calculate Sands's potential income because it determined that Sands "has been voluntarily unemployed during at least part of" the time period relating to these child-support proceedings. But it was limited to calculating Sands's income potential based on his probable earnings or minimum wage because, at the time of the August review hearing, Sands's unemployment-compensation benefits were nearly exhausted.

If the district court calculated Sands's potential income based on minimum wage, it clearly erred because it imputed Sands's income at nearly double the $13.50 per hour minimum-wage calculation. *See id.* Similarly, the district court likely erred if its calculation was based on probable earnings because Sands's imputed income does not reflect his recent work history. Sands's gross income in 2014 was $12,567.60, which is much less than the income potential calculated by the district court. And the county acknowledged that $13 per hour was his previous wage based on wage-match history.

Because the written findings in the September order modifying Sands's child-support obligation are incomplete and because it is unclear under which subdivision the district court calculated Sands's income potential, we remand this case to the district court to include additional findings to support its September order and calculations.

## II.

Sands argues that the district court abused its discretion by awarding attorney fees to Lovick because it failed to support the award with any findings or legal authority. This court reviews an award of attorney fees under the abuse-of-discretion standard. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999). "Remand for additional findings is appropriate when the district court fails to make adequate findings." *Hemmingsen v. Hemmingsen*, 767 N.W.2d 711, 718, 720 (Minn. App. 2009), *review granted* (Minn. Sept. 29, 2009), *and appeal dismissed* (Minn. Feb. 1, 2010).

The district court may award attorney fees based on conduct, need, or the enforcement of child support. The district court shall award need-based attorney fees if it finds

> (1) that the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding;
> (2) that the party from whom fees, costs, and disbursements are sought has the means to pay them; and
> (3) that the party to whom fees, costs, and disbursements are awarded does not have the means to pay them.

Minn. Stat. § 518.14, subd. 1 (2014). The district court may award conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of the proceeding." *Id.* A child-support obligee may also recover attorney fees from the obligor to enforce a child-support judgment if the arrearages are at least $500 and at least 90 days past due. Minn. Stat. § 518A.735(a) (2014). But a district court's discretion to award attorney fees related to the enforcement of child support is limited:

9

> [T]he only issues to be determined by the court are whether the attorney fees or collection costs were reasonably incurred by the obligee for the enforcement of a child support judgment against the obligor or the validity of the child support judgment on grounds limited to mistake of fact. The fees and costs may not exceed 30 percent of the arrearages.

Minn. Stat. § 518A.735(d) (2014).

The district court ordered Sands to pay Lovick $9,952 in attorney fees. The district court found that Sands's parents are paying his attorney fees, that Lovick's attorney fees have been generated due to Sands's failure to pay child support, and that Sands "has been voluntarily unemployed during at least part of that time period." But the record does not identify which statutory authority the district court relied on to award Lovick attorney fees. *See Geske v. Marcolina*, 624 N.W.2d 813, 816 (Minn. App. 2001) ("Because there are different requirements for a fee award, depending on the authority upon which the award is based, a proper review requires that the district court identify the authority for its fee award.").

If the district court awarded Lovick need-based attorney fees, its findings do not demonstrate that it considered Lovick's means to pay. Moreover, it is unclear whether the district court awarded conduct-based attorney fees or attorney fees to enforce child-support payments because its justification awarding attorney fees was limited to finding that Lovick's attorney fees have been generated "in response to [Lovick] not getting child support." And, if the award of attorney fees was based on child-support enforcement, the district court's award is $2,553.54 greater than the amount authorized by statute because 30% of Sands's $24,661.54 arrearages is $7,398.46.

10

Because it is unclear under which statutory authority attorney fees were awarded, we remand the award of attorney fees to the district court so it can make the requisite findings.

## III.

On appeal, Lovick seeks an additional $4,452.50 in attorney fees, arguing that Sands is unreasonably contributing to the length and expense of the appellate process. We have discretion to award attorney fees on appeal. *Case v. Case*, 516 N.W.2d 570, 574 (Minn. App. 1994). And we may award conduct-based attorney fees "against a party who unreasonably contributes to the length or expense of the proceeding." Minn. Stat. § 518.14, subd. 1.

Here, Lovick claims that the continuation of this appeal is unreasonable and unnecessary because she concedes the issues raised by Sands. But the county filed a responsive brief after Lovick submitted her letter, in which it did not concede the issues. Sands did not move this court for any extensions; nor is there any indication that he unnecessarily delayed the appellate process. Additionally, it is unclear how Sands contributed to expenses incurred by Lovick's attorney, which may be excessive, because she did not file a responsive brief. Because we conclude that Sands did not unnecessarily contribute to the length or expense of this proceeding, we deny Lovick's motion for conduct-based attorney fees in connection with this appeal.

We reverse the district court's September order and Lovick's award of attorney fees and remand these orders to the district court for further findings as required. The September order properly imposed purge conditions on Sands but modified his child-

11

support obligation without adequate findings. The district court has discretion to determine whether it needs to reopen the record in order to make sufficient findings. *See Frank-Bretwisch v. Ryan*, 741 N.W.2d 910, 917 (Minn. App. 2007). We also deny Lovick's motion for conduct-based appellate attorney fees.

**Reversed and remanded; motion denied.**